UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
PADRAIC KEATING,

     Petitioner,

 -against-          **MEMORANDUM AND ORDER**
                 Case No. 03-CV-1286 (FB)
THE PEOPLE OF THE STATE OF NEW
YORK,

     Respondents.
----------------------------------------------------------x

*Appearances:*
*For the Petitioner:*         *For the Respondent*:
VIVIAN SHEVITZ, ESQ.       DANIEL M. DONOVAN, JR., ESQ.
150 Greenway Terrace, No. 52W    District Attorney, Richmond County
Forest Hills, New York 11375      By: ANNE GRADY, ESQ.
                 Assistant District Attorney
LAUREN G. KLEIN, ESQ.       130 Stuyvesant Place
P.O. Box 2042           Staten Island, New York 10301
Nantucket, Massachusetts 02584

**BLOCK, Senior District Judge:**

    In 1996, Patrick Keating ("Keating") was convicted after a jury trial in the Supreme Court of New York, Richmond County, for depraved-indifference murder for causing the death of Roseann Sorrentino while he was driving drunk. The trial received extensive news coverage, undoubtedly fueled by the fact that the victim was the wife of a New York City police officer.[1] Keating was sentenced to, and is presently serving, 25 years to life on the murder charge. The jury also found Keating guilty on every other charge for which he was indicted: second-degree manslaughter, first-degree vehicular manslaughter, second-degree vehicular manslaughter, two

---

[1] New York area newspapers reported Keating's arrest and indictment. Keating has submitted some of these in support of his petition; the Court takes judicial notice of others. *See* Lynette Holloway, *Family Watches, Helpless, As Woman Is Killed*, N.Y. Times, Sept. 10, 1995; Tom Raftery & Dean Chang, *Hit-Run Driver Kills S.I. Mom*, N.Y. Daily News, Sept. 10, 1995; *A Human Sacrifice*, N.Y. Daily News, Sept. 14, 1995; Mary Engels, *Indict Man In Cop Kin Hit-Run*, N.Y. Daily News, Sept. 15, 1995.

counts of driving while intoxicated, and two counts of leaving the scene of an accident; the top counts of this batch of convictions -- second-degree manslaughter and first-degree vehicular manslaughter -- each drew a sentence of 5 to 15 years. All sentences were concurrent.

After numerous failed efforts to overturn his convictions in state court, Keating then resorted to seeking relief in federal court by timely bringing this proceeding for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, raising numerous exhausted and unexhausted claims. His cause is a textbook example of the value of the writ as a means for challenging the constitutionality of a state-court conviction in federal court since one of Keating's claims -- albeit unexhausted -- raises a serious constitutional issue as to the legitimacy of the depraved-indifference murder conviction. *See Engle v. Isaac*, 456 U.S. 107, 126 (1982) ("Today, as in prior centuries, the writ is a bulwark against convictions that violate fundamental fairness." (citation and internal quotation marks omitted)); *Rosado v. Civiletti*, 621 F.2d 1179, 1179 (2d Cir. 1980) ("When all other avenues of relief have been closed, our nation's courts have consistently vindicated the fundamental guaranties of due process of law by invoking their general jurisdiction . . . to free those unlawfully restrained through the issuance of a writ of habeas corpus.").[2]

Keating's *habeas* petition was referred to Magistrate Judge Pollak, who issued a Report and Recommendation (the "R&R") recommending that the petition be denied. Keating timely objected to certain aspects of the R&R, requiring the Court to review them *de novo*. *See* 28 U.S.C. § 636(b)(1).

For the following reasons, the Court stays the proceeding to allow Keating to exhaust his constitutional claim that his appellate counsel was ineffective for failing to challenge the

---

[2]As explained *infra,* although over thirteen years has passed since Keating's convictions, he is not responsible for most of the time it has taken before the Court rendered this decision.

admission by the trial judge, over trial counsel's strenuous objection, of an irrelevant and prejudicial videotaped statement made by Keating to the police after his arrest. All other unexhausted claims are denied on the merits pursuant to 28 U.S.C. § 2254(b)(2). All exhausted claims are held in abeyance.

# I

## A. State-Court Proceedings

The Court need not repeat Magistrate Judge Pollak's detailed recounting of the facts leading to Keating's convictions and his numerous attempts to overturn them; the following summary suffices.

### 1. *Trial Proceedings*

At trial, the prosecution established that Keating was driving while heavily intoxicated on the night of September 8, 1995. Driving well above the speed limit and ignoring traffic lanes and signals, he was involved in one minor accident and two near collisions on Sand Lane in Staten Island at around 10:30 p.m. Fifteen minutes later, Keating was speeding down Father Capodanno Boulevard on the southeastern shore of the island. At approximately 10:50 p.m., he sideswiped the car of Vincent and Roseann Sorrentino as the latter was getting her twin infant daughters out of the back seat. The impact shattered the rear window of the Sorrentinos' car, causing the two girls minor injuries. More tragically, Mrs. Sorrentino was carried on the hood of Keating's van for several hundred feet before she was thrown to the ground. She died almost immediately.

Some three hours after the accident, Keating was asked to take a blood alcohol concentration ("BAC") test; he consented:

Yes, sir. I will take the test. I will not release the police department

> or the doctors from responsibility of the needle breaking off in my
> arm, et cetera et cetera, but I will take the test freely and of my own
> will.[3]

The statement was videotaped.

The prosecution referred to the videotape in its opening statement: "You'll be able to see [Keating]. Evaluate him for yourself. You'll see a videotape and listen closely to what he says and *who he's concerned about* roughly two hours after mowing Roseann Sorrentino down." Trial Tr. at 38 (emphasis added). Keating's counsel immediately objected, but was overruled. *See id.*

On the second day of trial, Keating's counsel challenged the prosecutor's anticipated proffer of the videotape into evidence on the ground that Keating's statements about needles and liability "ha[d] no relevance to these proceedings." *Id.* at 265. In response, the prosecutor argued that that portion of the videotape was "indicative of [Keating's] mind set on that night." *Id.* at 266. The trial judge was initially skeptical:

> My gut feeling is I don't see where it has any relevance . . . his saying
> to the officers, "I'm going to hold the hospital responsible if they
> draw the blood." What does that have to do with the accident?
>    \*   \*   \*
> It would be a different story if we were talking about intent because
> the jury would then be able to consider what the defendant said or
> acted — what he said and how he acted before, during and after the
> event. But there's no intent in this case.
>    \*   \*   \*
> [The prosecution wants] to have a retrospective of his application of
> the blood test to reflect upon and be a mirror into his conduct at the
> time. I think that's a stretch. I think that's a stretch.

*Id.* at 267-71. The prosecution persisted:

---

[3]At the same time, Keating declined to take a coordination test "without [his] lawyer present."

> [The statement] certainly is relevant. It's what the defendant said. It's indicative of his mind set on that night and it's the actual words that he spoke some two hours after he struck and killed a young woman.
>
> * * *
>
> Judge, *depraved indifference goes to not just his mind set of recklessness* . . . . [The statement is] exactly relevant [because] *it shows depravity* . . . . [Depravity is] not just the physical acts. *It can be what's in a person's mind* and that can be evidence with regard to what they say.
>
> * * *
>
> It's relevant in *whether or not when objectively viewed*, it made him *so uncaring, so callous, and so dangerous and inhuman* as to demonstrate an attitude of total and utter disregard for the life of a person or persons in danger.

*Id.* at 266, 268-69, 272 (emphases added). In response, Keating's trial counsel argued that the prosecution's theory of relevance was a plain misstatement of the law of depraved indifference murder:

> What [the prosecution] is addressing is the mental element, that goes to my client's state of mind. If it does, then the mental element is recklessness. I don't believe that statement in any way goes to the issue of recklessness and if he's addressing the issue of depraved indifference, then my argument is simply that the incident is over. It's completed. This is ex post facto and it's therefore not relevant. It's nothing to do with the causal analysis of what led to the death of Mrs. Sorrentino.
>
> * * *
>
> The statement of which I'm drawing your attention on the video has nothing to do with his conduct at the time of the incident.

*Id.* at 267, 272. The judge was ultimately persuaded by the prosecution and held that Keating's mind set "after the accident [was] probative of what his mind set was before the accident." *Id.* at 272.

> The prosecution made good use of the videotape in its closing argument:
>
> On the videotape you could see how drunk [Keating] was and *you could see who he was concerned with*. You can see the blood test was voluntary, but you can see that *all he was concerned about was*

5

> *not releasing anybody from liability* if the needle broke off in his arm. He wasn't going to release the police from liability or the hospital, blah, blah, blah, blah, blah, blah. Remember him saying that?
>
> *Is that somewhat callous* after you've been involved in an accident where you mowed down a 26 year old woman? *Ask yourself what that tells you about what he was thinking*[.]

*Id.* at 853 (emphases added). Once again, Keating's counsel objected and was overruled. *See id.* at 854.

During its deliberations, the jury asked to see the videotape; it was the only exhibit (out of approximately 60) that it requested. The jury rendered its verdict an hour and a half after viewing the tape. Keating's counsel unsuccessfully moved to set aside the verdict on several grounds, including admission of the videotape. *See* Trial Tr. at 973.

## 2. Post-Trial Proceedings

On appeal, Keating, through different counsel, raised four issues not presented in his *habeas* petition; the relevance of the videotape was not among them.[4] Four years later, the Appellate Division affirmed; the Court of Appeals declined review. *See People v. Keating*, 724 N.Y.S.2d 900, 901 (2d Dep't 2001), *leave to appeal denied*, 97 N.Y.2d 756 (2002).[5]

Over the next three years, Keating filed a total of six collateral challenges *pro se*. Five were brought under New York Criminal Procedure Law § 440.10. Each was denied as either procedurally barred or lacking in merit.

---

[4]Counsel did argue, however, that all of Keating's post-arrest statements (including the videotape) should have been suppressed as obtained in violation of the Fourth Amendment and *Miranda*. Rejected on appeal, that issue has not been raised here.

[5]The reason for the unusual length of the appellate proceedings is not apparent from the record.

6

Between the filing of his third and fourth § 440.10 petitions, Keating petitioned the Appellate Division *pro se* for a writ of *coram nobis*, contending that his appellate counsel had been constitutionally ineffective for failing to raise a plethora of claims on direct appeal. Only three of those claims have been pursued in this Court: (1) appellate counsel's failure to fault trial counsel for not having Keating's van inspected prior to its destruction; (2) appellate counsel's failure to fault trial counsel for failing to request that the four most serious counts (depraved-indifference murder, second-degree manslaughter, first-degree vehicular manslaughter and second-degree vehicular manslaughter) be charged in the alternative; (3) appellate counsel's failure to assert a due-process violation based on the prosecutor's opening statement and closing argument.[6] The Appellate Division tersely denied the petition on the merits: "[Keating] has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Keating*, 800 N.Y.S.2d 646, 646 (2d Dep't 2005).

Notably, the relevance of the videotape was not challenged in any of Keating's § 440.10 motions.[7] Nor did Keating argue in his *coram nobis* petition that appellate counsel's failure to raise the issue amounted to ineffective assistance.

**B. Federal *Habeas* Proceedings**

Proceeding *pro se*, Keating filed his *habeas* petition on February 27, 2003. Recognizing that his petition contained unexhausted claims, he sought and obtained a stay of the federal proceeding. The stay remained in effect until September 20, 2005, by which time four of

---

[6]The R&R sets forth a complete list of Keating's *coram nobis* claims at pages 22-23.

[7]As appellate counsel did on direct appeal, Keating argued that all post-arrest statements (including the videotape) should have been suppressed as obtained in violation of the Fourth Amendment and *Miranda*. As noted, that issue has not been raised here.

7

the five § 440.10 motions and the *coram nobis* petition had been denied.[8]

---

[8]The fifth § 440.10 motion was filed on September 30, 2005, and denied on November 18, 2005; leave to appeal was denied on March 16, 2006.

On December 28, 2005, counsel was appointed to represent Keating. Two years later, counsel filed an amended petition definitively framing Keating's *habeas* claims in two points:

Point I contains the claims that Keating's appellate counsel was ineffective for failing to argue that trial counsel was remiss in failing to inspect the van and request that the charges be presented to the jury in the alternative. In addition, Point I raises a host of other issues of alleged ineffectiveness of trial and/or appellate counsel; chief among them is the claim that appellate counsel was ineffective for failing to seek reversal based on the trial court's admission of the videotape as relevant to the depraved-indifference charge.

Point II addresses the due-process issue. Keating argues that the prosecutor's opening statement and closing argument misled and inflamed the jury, thereby depriving him of a fair trial.[9]

## II

As with the factual and procedural background, the Court need only summarize Magistrate Judge Pollak's thorough discussion of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the law governing Keating's *habeas* petition:

- A *habeas* petitioner must "adequately exhaust[] state remedies by fairly presenting both the factual and legal premises for his federal claim to the appropriate state courts." *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing 28 U.S.C. § 2254(b)(1)).

---

[9]In a letter dated April 14, 2008, Keating's counsel formally withdrew all claims not raised in the amended petition.

- A *habeas* court "need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989). An "independent and adequate" state procedural bar precludes *habeas* review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

- For exhausted claims not procedurally barred (i.e., claims addressed on the merits by a state court), a *habeas* court's review is limited to whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

- The "clearly established law" governing claims of ineffective assistance of appellate counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show both (1) "that counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Counsel's failure to raise a meritorious issue of state law warrants *habeas* relief if the *Strickland* standards are met. *See, e.g., Flores v. Demskie*, 215 F.3d 293 (2d Cir. 2000).

Applying this law, Magistrate Judge Pollak concluded that only three of Keating's claims were exhausted: (1) the claim that appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on the latter's failure to inspect Keating's van; (2) the claim that appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on the latter's failure to request that the four most serious charges be charged in the alternative; and (3) the claim that the prosecutor's opening statement and closing argument deprived Keating of a fair trial. The R&R recommended denying each of the exhausted claims on the merits. *See* R&R at 53-55 (failure to inspect van), 57-61 (failure to request charge in the alternative), 72-75 (prosecutorial misconduct).

10

The magistrate judge then concluded that all other claims -- including the claim regarding the videotape's admissibility -- were unexhausted, but would now be procedurally barred if raised in state court because they could have been raised in Keating's prior § 440.10 motions or, in respect to ineffective assistance of appellate counsel, in his prior *coram nobis* petition. In the alternative, she recommended denying all unexhausted claims as without merit.[10]

Keating, both through counsel and *pro se*, objected to the R&R in several respects. Most of the objections challenged isolated statements in the R&R having no bearing on the magistrate judge's ultimate recommendations; however, Keating also took issue with the R&R's conclusion that the videotape was admissible evidence of consciousness of guilt on the drunk-driving charges.

The Court held oral argument on Keating's objections on December 17, 2009; discussion focused almost exclusively on the admission of Keating's videotaped statement. Although the Court found Keating's objection well-taken, *see* Tr. of Dec. 17, 2009, at 14 ("I don't think there's any rational, probative reason why that video should have been show[n] to the jury."), it was clear to all parties that the Court could not consider granting *habeas* relief until Keating exhausted the issue in state court.

On January 7, 2010, Keating's counsel filed a *coram nobis* petition in the Appellate Division, raising, as the only issue, appellate counsel's failure to challenge the admission of the

---

[10]Many of Keating's unexhausted claims fall under two broad claims: first, that trial counsel was ineffective on various scores, including but not limited to: (1) failing to seek a change of venue; (2) refusing to let Keating testify in his own defense; and (3) failing to explain trial stipulations to Keating before agreeing to them, R&R at 67-68; second, that appellate counsel unreasonably failed to raise a claim of ineffective assistance of trial counsel on account of trial counsel's failure or refusal to: (1) pursue an "other vehicle" theory; (2) challenge the jury instructions on several issues; and (3) raise a "selective prosecution" defense. R&R at 31-33. The R&R correctly concluded that these claims were, indeed, unexhausted.

11

videotape on direct appeal.

### III

Because Keating's petition contains both exhausted and unexhausted claims, it is a "mixed" petition. Such petitions must generally be dismissed, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510 (1982). In *Rhines v. Weber*, 544 U.S. 269 (2005), however, the Supreme Court held that a district court should, in some circumstances, stay a mixed petition:

> [I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition.

*Id.* at 277-78.[11]

---

[11]By contrast, *Rhines* held that "the district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless." *Id*. at 277. The high court cited § 2254(b)(2) of AEDPA, which provides that a *habeas* claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State"; its rationale is to spare state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion.

AEDPA does not set out a standard for denying an unexhausted claim on the merits, and neither the Supreme Court nor the Second Circuit has established one. The various formulations bandied about in the Second Circuit's district courts have the common thread of disposing of unexhausted claims that are unquestionably meritless. *See, e.g., Williams v. Artus*, ___ F.Supp.2d ___, 2010 WL 76885, at *8 (S.D.N.Y. Mar. 8, 2010) ("plainly meritless"); *Robinson v. Phillips*, 2009 WL 3459479, at *1 (E.D.N.Y. Oct. 23, 2009) ("patently frivolous"). By contrast, state courts must, as a matter of comity, be afforded the opportunity to first pass upon any *habeas* claim that is at least potentially meritorious. *See, e.g., Reid v. Angelone,* 369 F.3d 363, 373 (4th Cir. 2004) (*habeas* court should not deny unexhausted claims if "reasonable jurists could debate" their merits).

Regardless of the nomenclature employed, all of Keating's unexhausted claims -- other than the videotape claim -- clearly warrant denial under § 2254(b)(2). In any event, they have probably

Such is the case in respect to petitioner's unexhausted claim that his appellate counsel was ineffective for failing to raise the issue of the admissibility of the videotape on direct appeal.

The first and third considerations may be disposed of with dispatch: With respect to "good cause," the Supreme Court has recognized in *dicta* that a premature *habeas* petition is an acceptable means of avoiding the potential uncertainties of state post-conviction procedures, *see Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005); "[d]istrict courts have relied on this dicta to find good cause where the petitioner filed a 'protective' federal habeas petition where the petitioner was confused as to whether his claims were properly exhausted in state court." *Fernandez v. Artuz*, 2006 WL 121943, at *4 (S.D.N.Y. Jan. 18, 2006). And although Keating's attempts at exhaustion were a multi-year endeavor, they were not "intentionally dilatory"; unlike a petitioner in a capital case, Keating had no incentive to prolong the proceedings. *See id.* at *6 ("[F]or non-capital inmates . . . , the faster their federal habeas proceedings (and any state collateral proceedings) are decided, the faster they could be released from prison, and thus ordinarily they have no reason to delay.").[12]

## IV

It remains, therefore, to explain why the claim is "potentially meritorious." But before doing so, there is one additional hurdle that needs to be addressed. There is no warrant to stay a mixed petition if the potentially meritorious unexhausted claim or claims would clearly be procedurally barred under state law. If such be the case, a federal *habeas* court should deem the

---

been abandoned; Keating has raised only his one meritorious claim in his pending *coram nobis* application.

[12]Although Keating was convicted more than 13 years ago, it bears repeating that he is not responsible for most of the delay: He filed his *pro se habeas* petition less than a year after the New York Court of Appeals declined review; the stay allowing him to pursue collateral challenges in state court was in place for less than 18 months, during which time Keating was able to complete five of his six collateral challenges.

claim exhausted and invoke the state's bar.  *See Harris*, 489 U.S. at 263 n. 9 ("[A] federal *habeas* court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.").  Such a course of action respects the procedural requirements of state law while saving  state courts the trouble of invoking them in circumstances where they would plainly do so.

The Court declines to adopt the magistrate judge's recommendation that all of Keating's unexhausted claims be deemed procedurally barred. In *People v. D'Alessandro*, 13 N.Y.3d 216 (2009), which was decided after the R&R was issued, the New York Court of Appeals held that the statutory restrictions on successive § 440.10 motions do not apply to *coram nobis* petitions to the Appellate Division. *See id.* at 221 n.* ("[T]he Legislature has not passed a similar statutory mechanism to address claims of ineffective assistance of counsel brought at the Appellate Division . . . ."). The *D'Alessandro* court cautioned against summary denial of a *coram nobis* petition simply because it is successive:

> Even if the Appellate Division had the discretion to decline to review the merits of subsequent coram nobis applications, it would have been an abuse of such discretion to refuse to entertain the second application in this case, which was brought by counsel nine years after the first application and raised different and much more substantial arguments than those previously raised [*pro se*].

*Id.* at 221.

It is not clear whether *D'Alessandro* stands for the proposition that the Appellate Division must *always* review the merits of a successive *coram nobis* petition, or the more limited proposition that the Appellate Division must review the merits of a successive petition that raises "much more substantial arguments" than the prior petition. *Id.* In either case, it is unlikely that the Appellate Division would invoke a procedural bar to avoid reviewing Keating's claim that his appellate counsel was ineffective for failing to challenge the relevance of the videotape; as now explained, that claim is sufficiently meritorious to warrant both a second *coram nobis* petition under *D'Alessandro* and the "stay and abeyance" dictate of *Rhines*.[13]

---

[13]New York law also requires that challenges to evidentiary rulings be preserved for appeal by a contemporaneous objection. *See, e.g., People v. Laigo*, ___ N.Y.S.2d ___, 2010 WL 551419, at *1 (2d Dep't Feb. 16, 2010) (citing N.Y. Crim. Proc. Law § 470.05(2)). Since trial counsel

15

# V

The theory pursued by the prosecution at trial was that Keating's statement of concern for a needle breaking off in his arm showed the depravity of his conduct, and thus was relevant to the charge of depraved-indifference murder. New York's depraved-indifference statute states that "a person is guilty of murder in the second degree when[,] [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2).

At the time of Keating's trial, the well-established law of New York was that the "depravity" element of depraved-indifference murder had nothing to do with the defendant's state of mind:

> [T]he focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct.

*People v. Register*, 60 N.Y.2d 270, 277 (1983). Thus, "[e]vidence of the actor's subjective mental state [was] *not pertinent* to a determination of the additional element required for depraved indifference murder." *People v. Roe*, 74 N.Y.2d 20, 24 (1989).

To be sure, the last few years have seen a dramatic shift in the legal landscape, culminating with the 2006 pronouncement by the New York Court of Appeals that "[d]epraved indifference to human life is a culpable mental state." *People v. Feingold*, 7 N.Y.3d 288, 294 (2006) (overruling *Register*). *Feingold*, however, does not apply retroactively: "*Register* states the correct

---

clearly and strenuously objected to the admission of the videotape, this basis for invoking a procedural bar is not apt.

16

interpretation of the law of New York with respect to the elements of depraved indifference murder [as of] 2001." *Policano v. Herbert*, 7 N.Y.3d 588, 602 (2006).

In any event, it is not clear to the Court how Keating's statement about needles, taken three hours after the accident, would be relevant even if *Feingold*'s formulation of depraved indifference were to apply. As the Court reads the case law, the relevant inquiry under *Feingold* is defendant's state of mind *at the time he acts*:

> [D]epraved indifference is . . . a willingness *to act* not because one intends harm, but because one simply doesn't care whether grievous harm results or not. Reflecting wickedness, evil or inhumanity, *as manifested by brutal, heinous and despicable acts*, depraved indifference is embodied *in conduct* that is so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to render the actor as culpable as one whose conscious objective is to kill.

*People v. Suarez*, 6 N.Y.3d 202, 214 (2005) (emphases added). The Court has no qualms with the general proposition that a defendant's subsequent statements and conduct may bear on his or her state of mind at an earlier time. But the Court fails to see how Keating's self-centeredness at the police station says anything about his state of mind behind the wheel.[14]

The failure of counsel to raise a state-law issue that is "significant and obvious" violates *Strickland*'s performance prong so long as it " fell outside the wide range of professionally competent assistance." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). As the Second Circuit

---

[14]Respondent disingenuously argues, in the alternative, that the videotape was relevant to the two drunk-driving charges to show Keating's intoxicated condition. Actually, the videotape, which the Court has viewed, does not appear to depict Keating in a drunken state at all; he is standing, although slightly slumped, but his speech is not slurred, he clearly comprehends the questions posed to him, and his responses are lucid. It is beyond cavil on this record that the prosecution wanted it in evidence for Keating's statement about holding the authorities liable if the needle broke in his arm solely as evidence of depraved indifference. In any event, the offending statement could easily have been redacted.

17

recently explained, this is the same standard that New York has adopted for assessing an attorney's performance under the state constitution. *See Rosario v. Ercole*, ___ F.3d ___, 2010 WL 1427507, at *4 (2d Cir. Apr. 12, 2010) ("The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness."). It certainly would be appropriate for the Appellate Division to determine that Keating's appellate counsel failed that test. *See also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (holding that failure to pursue state-law claim that is a "sure winner" violates *Strickland*).

If the Appellate Division concludes that appellate counsel's performance was deficient, it must then decide whether Keating suffered prejudice. This would require the state court to determine whether there would be a reasonable probability that New York's highest court would rule that the jury would not have convicted Keating of depraved indifference murder if not for the videotape. *See Mayo*, 13 F.3d at 534 (petitioner must demonstrate that there was "a reasonable probability that his claim would have been successful before the state's highest court" (citation, internal quotation marks and alterations omitted)). That question would presumably entail harmless-error analysis. *See, e.g.*, *Munoz v. United States*, 2008 WL 2942861, at *15 (E.D.N.Y. July 28, 2008) ("Because the admission of [certain] testimony was harmless error, Mr. Munoz is unable to establish prejudice as required for relief under *Strickland*."). Under New York law, the erroneous admission of evidence is harmless if "(1) [the] proof of guilt was overwhelming; and (2) there was no significant probability that the jury would have acquitted had the proscribed evidence not been introduced." *People v. Kello*, 96 N.Y.2d 740, 744 (2001).[15]

---

[15]If the issue of harmless error were ultimately bottomed on ineffective assistance of trial counsel and not, as here, on an erroneous evidentiary ruling by the trial court, the New York standard would be "more generous" to the defendant than *Strickland*:

In making this assessment, the Appellate Division will undoubtedly consider that the prosecutor thought the videotape crucial to showing that Keating was "so uncaring, so callous, and so dangerous and inhuman as to demonstrate an attitude of total utter disregard for the life of a person or persons in danger." Trial Tr. at 272. That he thus ascribed great importance to the videotape in both his opening statement and his closing argument, inviting the jury to draw the prejudicial (and legally irrelevant) inference that Keating was a "callous" individual concerned only with his own well-being "two hours after mowing Roseann Sorrentino down." *Id.* at 38, 853. And, finally, that the video was the only evidence the jury called for during its deliberations.[16]

## CONCLUSION

The Court stays the proceeding to allow Keating to exhaust the claim that his

---

> To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall. A single error by otherwise competent counsel may meet this standard if that error compromised the integrity of the trial as a whole.

*Rosario*, ___ F.3d ___, 2010 WL 1427507, at *4 (citing *People v. Turner*, 5 N.Y.3d 476, 480 (2005), and *People v. Caban*, 5 N.Y.3d 143, 155-56 (2005)).

[16]As for the three exhausted claims, judicial economy might suggest addressing those claims now, the better to focus on the potentially meritorious unexhausted claim if and when the time comes. It is, however, the exhausted claims that provide the Court with the option to stay the *habeas* proceeding in the first place. *See Zarvela*, 254 F.3d at 382 ("If a district court elects not to stay *the exhausted claims* and instead dismisses the entire petition, it should normally include in the dismissal order an appropriate explanation to a pro se petitioner of the available options and the consequences of not following required procedures." (emphasis added)). If the Court were to rule on the exhausted claims, it would be left with a petition containing *only* unexhausted claims; the Court can only dismiss such a petition. *See Carpenter v. Reynolds*, 212 F. Supp. 2d 94, 98 (E.D.N.Y. 2002) ("Carpenter's petition contains only unexhausted claims. Therefore, the Court has no basis to retain jurisdiction while Carpenter pursues exhaustion."). Accordingly, the Court will defer ruling on the exhausted claims and address them if and when the stay is lifted.

appellate counsel was ineffective for failing to raise the issue of the relevance of the videotape.[17] All other unexhausted claims are denied on the merits pursuant to 28 U.S.C. § 2254(b)(2). All exhausted claims are held in abeyance.

Within thirty days of completion of the state-court proceeding, Keating shall move to vacate the stay or withdraw his petition. *See Rhines*, 544 U.S. at 278 ("[D]istrict courts should place reasonable time limits on a petitioner's trip to state court and back."); *Zarvela*, 254 F.3d at 381 (reasonable period to return to federal court after exhaustion is "normally 30 days").[18] Absent extraordinary circumstances, failure to comply will result in dismissal of the petition in its entirety.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 28, 2010

---

[17] Although Keating has, in his understandable haste to exhaust the claim, already filed a *coram nobis* petition, the Court is not aware of any rule prohibiting a *habeas* petition from proceeding on two fronts; however, the wiser course would have been to seek and obtain a stay prior to filing to allow the Court to fully explain its reasons for granting the stay.

[18] Keating is cautioned that exhausting a claim of ineffective assistance of appellate counsel requires, if necessary, seeking leave to appeal to the Court of Appeals. *See* N.Y. Crim. Proc. L. § 450.90(1) (authorizing appeal of "order granting or denying a motion to set aside an order of an intermediate appellate court on the ground of ineffective assistance or wrongful deprivation of appellate counsel").